**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Michael M. Jablonski,                                      Case No. 3:11CV02291

                Plaintiff

      v.                                                     **ORDER**

Portfolio Recovery Associates,

                Defendant

      This is a case involving the size of an award of attorneys' fees and related costs in a Federal Debt Collections Practices Act (FDCPA) case. Plaintiff Michael Jablonski's attorneys, part of the firm Kimmel & Silverman (Kimmel), request fees in the amount of $6,371 and costs in the amount of $350 (totaling $6,721) resulting from their successful FDCPA suit. Defendant Portfolio Recovery Associates, LLC, argues this amount is excessive, and that Kimmel is entitled only to $1,500 in fees. The defendant does not dispute the request for an award of costs in the amount of $350.

      Jurisdiction is proper pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

      Pending is plaintiff's petition for attorney's fees. [Doc. 9].

      For the following reasons, I reduce the requested award of attorneys' fees to $3,948.20.

**Standard of Review**

      In a successful FDCPA case, plaintiff's counsel may seek "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The district court determines what is reasonable in light of the particular circumstances of each case. *See, e.g., Lee v. Thomas & Thomas*, 109 F.3d 302 (6th Cir. 1997). A reasonable fee "is one that is adequate to attract competent counsel, but [does] not produce windfalls to attorneys." *Hadix v. Johnson*, 65

1

F.3d 532, 535 (6th Cir. 1995) (quoting *Blum v. Stenson*, 465 U.S. 886, 897 (1984) (internal quotes and ellipses omitted)). Determining a reasonable rate requires that I use prevailing market rates in the local community. *Missouri v. Jenkins*, 491 U.S. 274, 285–86 (1989).

### Discussion

Kimmel claims that its attorneys and paralegals worked for 22.4 hours on this case, at a total cost of $6,371.

Kimmel claims the following billable hours, rates and total fees for its work on plaintiff's case:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Craig Thor Kimmel (CTK) | 4.1 | $425 | $1742.50 |
| Christina Gill-Roseman (CGR) | 2.3 | $300 | $690.00 |
| Amy L. Bennecoff (ALB) | 8.5 | $300 | $2523.00[1] |
| Tara L. Patterson (TLP) | 0.4 | $300 | $120.00 |
| Jacob Ginsburg (JUG) | 3.2 | $225 | $720.00 |
| Joseph Gentilcore (JLG) | 0.1 | $225 | $22.50 |
| **Paralegal** | | | |
| Dawn Grob (DG) | 2.1 | $165 | $346.50 |
| Jason Ryan (JR) | 1.1 | $155 | $170.50 |
| Pete Keltz (PK) | 0.6 | $60 | $36 |
| **All Staff** | | | |
| | 22.4 | --- | $6371 |

Defendants argue in response:

---

[1] Plaintiff's attorneys do not specify why they request a $27 reduction in what Bennecoff would otherwise be owed.

1.      The billable hourly rates Kimmel requests ($425 for a partner, $300 for regular associates, $225 for new associates and $155-165 for paralegals) are excessive in the Toledo legal market.

2.      The number of hours Kimmel claims it spent on the matter is excessive and includes duplicative work it did not need to do and clerical work for which it cannot recover.

3.      Kimmel's inconsistent billing practices – some items are block-billed, others are individually billed – result in inflated and/or excessive fee estimates.

### A. Plaintiff's Claimed Rates

I calculate a reasonable fee award by determining the "lodestar" – the reasonable hourly rate multiplied by the number of hours reasonably expended. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004). To determine the lodestar, I first determine the reasonable rates for Kimmel's work, and then analyze the billed hours it claims were required for this case.

Kimmel argues that its rates are reasonable in light of its expertise in the field, prior awards from other federal courts, the 2007 Consumer Law Attorney Fee Survey, the U.S. Attorney's Laffey Matrix and the National Law Journal.[2] Defendant argues that Kimmel's rates are significantly above what district courts have awarded firms performing similar work in Toledo and Ohio more generally, that courts in other jurisdictions have significantly reduced similar rate requests from Kimmel, and

---

[2] Kimmel cites a rather exhaustive twelve-part test the Fourth Circuit adopted from the Fifth Circuit as the standard for determining reasonable attorney's fees. *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)). The Sixth Circuit has not adopted this test for FDCPA fee awards, and I decline to use that framework here.

3

that the Consumer Law Attorney Fee Survey, Laffey Matrix and National Law Journal are improper sources to consider when calculating reasonable rates in Toledo, Ohio.

"A district court has broad discretion to determine what constitutes a reasonable hourly rate for an attorney." *Wayne v. Vill. of Sebring*, 36 F.3d 517, 533 (6th Cir. 1994). This means that while I may use prior awards as guidance, I still have discretion based on the particular facts of the case and the representation to adjust rates, hours and total fees accordingly.

Kimmel cites extensively to cases it claims support rates of greater than $300 per hour for experienced attorneys in FDCPA cases. Each case it cites supporting that contention, though, is from the Eastern District of Pennsylvania, analyzing reasonable rates specific to that area, and only for a single attorney. That attorney, Cary L. Flitter, is a Pennsylvania-based attorney with over twenty five years' experience in FDCPA cases. *See, e.g.*, *Harlan v. NRA Group LLC*, 2011 WL 813961 (E.D. Pa.) (awarding Flitter a $555 hourly rate); *Holliday v. Cabrera & Assoc., P.C.*, 2007 WL 30291 (E.D. Pa.) (awarding Flitter a $380 hourly rate); *Nelson v. Select Fin. Servs., Inc.*, 2006 WL 1672889 (E.D. Pa.) (awarding Flitter a $430 hourly rate); *Ciccarone v. Marchese*, 2004 WL 2966932 (E.D. Pa.) (awarding Flitter a $390 hourly rate).

Mr. Flitter is not before this court, nor did this case take place in the Eastern District of Pennsylvania. Were he before this court, prior awards from different courts in different venues would still not necessarily make a $555 hourly request reasonable in the Toledo area. The Sixth Circuit cases Kimmel cites set much lower rates for experienced lead counsel in FDCPA cases. *Dowling v. Litton Loan Servicing LP*, 320 Fed. Appx. 442, 447 (6th Cir. 2009) (finding a $300 hourly rate reasonable and within that court's discretion for experienced counsel); *Kelly v. Montgomery Lynch & Assocs., Inc.*, 2008 WL 4560744, *7 (N.D. Ohio) (awarding a $300 hourly

4

rate to experienced counsel, $150 to an associate and $75 to a paralegal); *Gradishier v. Check Enforcement Unit, Inc.*, 2003 WL 187416 (W.D. Mich) (awarding a $300 hourly rate to experienced counsel).

Defendant further cites to case from surrounding areas supporting similar rates for experienced lead counsel. *See Lee v. Javitch, Block & Rathbone, LLP*, 568 F. Supp.2d 870 (S.D. Ohio 2008) (awarding attorneys with twenty-one years' experience in Cincinnati $265 and $250 hourly rates) *Haddad v. Charles Riley & Associates, Inc.*, 2011 WL 2581918 (E.D. Mich.) (awarding an attorney with more than twenty years' experience $265 an hour); *Levander v. I.C. System, Inc.*, 2011 WL 1630171 (E.D. Mich) (awarding a less experienced attorney $200 per hour).

Kimmel also provides the 2010-11 Consumer Law Attorney Fee Survey, which shows a median hourly rate for all attorneys of $250 and the 95% median attorney rate at $437; the Laffey Matrix,[3] which would allow rates of between $305 and $734 for their attorneys; and a National Law Journal survey, which would allow for rates between $189 and $590 based on experience. In support of using these resources, Kimmel argues this district has already adopted their use. *See Livingston v. Calvary Portfolio Servs., LLC*, 2009 WL 4724268 (N.D. Ohio).

The *Livingston* decision does not hold that any of Kimmel's proffered resources are controlling on attorneys practicing in the Western Division of the Northern District of Ohio. The court there found, correctly, that the rates set in *Kelly*, *supra*, were not the "outer limits of reasonable rates" for FDCPA attorneys. *Livingston*, 2009 WL 4724268 at *1 n.1. The Consumer Law Survey was evidence that firms with more than five attorneys billed at higher rates than firms with fewer

---

[3] The Laffey Matrix is a rate schedule for litigating attorneys in the Washington-Baltimore area, set by the United States Attorney's Office following *Laffey v. Nw. Airlines, Inc.*, 572 F.Supp. 354, 371 (D.D.C. 1983).

than five attorneys. *Id.* at *2. The Laffey Matrix, whose use in *Adcock-Ladd v. Sec'y of Treasury,* 227 F.3d 343, 347 n.3 (6th Cir. 2000), was what *Livingston* referenced, is specific to the Washington-Baltimore area. The attorney seeking fees in *Livingston* referenced the National Law Journal's survey, but there is no indication that court actually used those calculations in reaching its decision.

In line with the rates other courts in this circuit have set, median rates from the Ohio State Bar Association's 2010 Economics of Law Practice Study,[4] the nature of the work, the experience of the attorneys and the necessity of setting rates adequate to attract competent counsel, I set the rates for the attorneys and staff in this case as such:

| Attorney | Hourly Rate |
|---|---|
| Craig Thor Kimmel (CTK) | $300 |
| Christina Gill-Roseman (CGR) | $200 |
| Amy L. Bennecoff (ALB) | $200 |
| Tara L. Patterson (TLP) | $200 |
| Jacob Ginsburg (JUG) | $175 |
| Joseph Gentilcore (JLG) | $175 |
| **Paralegal** | |
| Dawn Grob (DG) | $110 |
| Jason Ryan (JR) | $110 |
| Pete Keltz (PK) | $60 |

**B. Kimmel's Claimed Hours**

---

[4] Available at: http://www.ohiobar.org/General%20Resources/pub/2010_Economics_of_Law_Practice_Study.pdf

Kimmel claims that it spent 22.4 hours on plaintiff's case from beginning to end. Defendant argues that portions of Kimmel's work were either clerical in nature and therefore cannot be recompensed, unduly duplicative, or simply excessive.

### 1. Clerical Work

Fee-shifting statutes do not generally permit courts to award fees for clerical work. *See Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed" under fee shifting statutes, "regardless of who performs them."). However, "work done by non-attorneys such as paralegals or law clerks, may be compensable under the EAJA if the work is sufficiently complex or work traditionally performed by attorneys." *Snyder v. Comm'r of Soc. Sec.*, 2011 WL 66458, *2 (N.D. Ohio).

Defendant claims that 3.3 hours of Kimmel's work is actually clerical in nature. This work includes:

- 9/22/11: Obtaining information from the new client and opening the case in the database. (0.2 hours - JR). *Clerical.*

- 9/22/11: Discussing the case with CTK and preparing a factual outline summarizing the case in Amicus.[5] (0.6 hours - JR). *Attorney.*

- 10/3/11: E-mail to the client confirming the receipt of additional information and requesting information on bankruptcy. (0.1 hours - PK). *Attorney.*

- 10/10/11: Telephone call and follow-up e-mail with client regarding needed bankruptcy information. (0.2 hours - PK). *Attorney.*

- 10/12/11: Telephone call and follow-up e-mail with client regarding needed bankruptcy information. (0.2 hours - PK). *Attorney.*

- 10/25/11: E-filing the complaint. (0.1 hours - ALB). *Attorney.*

---

[5] Amicus is legal case-management software.

7

- 10/25/11: E-mail from the Court confirming the filing. (0.1 hours - ALB). *Clerical.*

- 10/25/11: Reviewing e-mail from Court confirming the filing. (0.1 hours - CGR). *Clerical.*

- 10/26/11: Saving date-stamped copies of complaint, civil cover sheet and summons in Amicus. (0.1 hours - DG). *Clerical.*

- 10/26/11: Receiving Notice of Assignment of Judge, updating Amicus to reflect. (0.1 hours - DG). *Clerical.*

- 10/26/11: Reviewing e-mail from ECF declaring that the original summons and Magistrate consent form were issued for service on Defendant, reviewing both forms. (0.2 hours - CGR). *Clerical.*

- 10/27011: Receiving e-filed Consent to Magistrate form and the summons issued by the Court, saving both to Amicus. (0.1 hours - DG). *Clerical*.

- 11/4/11: Receiving executed waiver; saving in Amicus and e-filing. (0.2 hours - DG). *Clerical.*

- 11/4/11: Reviewing e-mail from ECF declaring that the waiver of service was returned executed, and that the answer was due 12/26. (0.1 hours - CGR). *Clerical.*

- 11/4/11: Receiving letter from Defendant, saving in Amicus. (0.1 hours - DG). *Clerical.*

- 12/9/11: Reviewing e-mail from ALB directing DG to file amended complaint; e-filing amended complaint; updating Amicus. (0.3 hours - DG). *0.2 hours of attorney work, 0.1 hours of clerical work.*

- 12/9/11: Reviewing e-mail from ECF - amended complaint filed, and reviewing the same. (0.1 hours - CGR). *Attorney.*

- 12/9/11: Receiving e-mail from ECF with amended complaint, saving in Amicus. (0.1 hours - DG). *Clerical.*

- 1/16/12: Preparing exhibits. (0.1 hours - ALB). *Attorney.*

- 1/16/12: E-filing motion for fees, memo and exhibits. (0.2 hours - ALB). *Clerical*.

Updating an internal administrative system to reflect ongoing events in the case may be important, but it is inherently clerical. Likewise, although it may be an admirable practice for

8

attorneys to review each and every e-mail from the Electronic Court Filing system, reviewing confirmation e-mails of material the attorney previously filed is neither sufficiently complex nor the traditional work of attorneys to justify compensation under a fee-shifting statute.[6]

Accordingly, I reduce the hours claimed for all clerical work listed above, and award fees for all attorney work listed above.

## 2. Unnecessary/Unnecessarily Duplicative Work

### a. Amended Complaint

When Kimmel drafted its initial complaint, it named defendant as "Portfolio Recovery Associates, LLP". Portfolio Recovery Associates is actually an LLC. Kimmel sought to amend the complaint to change the errant letter in the caption, and billed 2.3 hours between Ginsburg (0.9 hours), Gill-Roseman (0.1 hours), Bennecoff (0.6 hours) and Grob (0.7 hours) to do so. Defendant argues that this was an exorbitant amount of time spent to change a single letter, particularly when defendant had no objection to Kimmel doing so. Kimmel says that it spent the majority of that time preparing the (superfluous) Motion to Amend the Complaint.

For such a minor change, all that was required (and all that was ultimately necessary) was for someone at Kimmel to call defendant's counsel and ask if there was any issue with Kimmel filing a corrected complaint. There was no need for any attorney to prepare the motion, as there was no opposition, and any experienced attorney (of which Kimmel has several) should have called

---

[6] Kimmel's argument that filing anything with the court is inherently the work of attorneys because attorney status is required to open an ECF account is tautological, at best. Anything a law practice does requires at least one practicing attorney; that does not make uploading a document work that an attorney must do any more than it makes putting a stamp on the envelope for bar dues work that an attorney must do.

opposing counsel before engaging in substantially more billable work at expense to either the client or the opposing party.

Accordingly, I award Kimmel time for Ginsburg's preparation of the amended complaint of 0.1 hours, and Grob's phone calls with opposing counsel of 0.2 hours. All other time is unreasonable.

### b. Preparation of Initial Complaint

Kimmel requests 4.8 hours for preparation of plaintiff's initial complaint. Defendant argues that what Kimmel filed is a form complaint, largely unchanged from other, similar cases, and that Kimmel's billed hours are unreasonable.

I am loath to second-guess the amount of time attorneys spend conferring with clients about legal matters. Likewise, law firms with any measure of experience will almost invariably have previously written complaints they can edit to serve the purposes of new clients. Their ability to do so is not grounds for an automatic presumption that any amount of time spent preparing a complaint is unreasonable.

I struck certain elements in defendant's list of preparation-related fees already, determining that they were clerical in nature; all other billed hours are reasonable.

### c. Block Billing Versus Individual Billing

Defendant argues that Kimmel's selective use of block billing resulted in excessive charging for simple tasks that, if billed together, would have resulted in significantly less time billed. As an example, defendant lists an e-mail exchange between attorney Kimmel, his client, and opposing counsel totaling 1.1 hours but which, defendant argues, is likely inflated because each exchange likely took less than six minutes.

10

Tenth-of-an-hour billing is a customary practice in the legal industry. Kimmel appears to block-bill in tenth of an hour increments for actions taken consecutively, and bill in separate increments when the actions are not taken consecutively. Whatever the relative wisdom of billing in this manner as opposed to another, it is consistent and logical. Although this practice may result in many small tasks throughout the day accumulating, billing for specific actions in minimum units of time will inevitably result in this. The practice, though, is reasonable, and I will not argue with its real or perceived inefficiency.

### Conclusion

Based on my above analysis, I find the following rates and billed hours reasonable:

| Attorney | Hours | Hourly Rate | Total |
|---|---|---|---|
| Craig Thor Kimmel (CTK) | 4.1 | $300 | $1230 |
| Christina Gill-Roseman (CGR) | 1.7 | $200 | $340 |
| Amy L. Bennecoff (ALB) | 7.6 | $200 | $1520 |
| Tara L. Patterson (TLP) | 0.4 | $200 | $80 |
| Jacob Ginsburg (JUG) | 2.4 | $175 | $420 |
| Joseph Gentilcore (JLG) | 0.1 | $175 | $17.5 |
| **Paralegal** | | | |
| Dawn Grob (DG) | 0.9 | $110 | $99 |
| Jason Ryan (JR) | 1.7 | $110 | $205.70 |
| Pete Keltz (PK) | 0.6 | $60 | $36 |
| **All Staff** | | | |
| | 19.5 | --- | $3948.20 |

For the foregoing reasons it is hereby:

ORDERED THAT:

11

Kimmel receive $3,948.20 in attorney's fees and $350 in costs from defendants.

So ordered.

s/James G. Carr
Sr. United States District Judge